**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VERONICA PRETTY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL NO. |
| THE PRUDENTIAL INSURANCE | : | 3:08-cv-60 (VLB) |
| COMPANY OF AMERICA and | : | |
| WALLACH SURGICAL DEVICES, INC. | : | |
| Defendants. | : | March 5, 2010 |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT [Doc. #56] AND**
**DENYING PLAINTIFF'S MOTION TO COMPEL [Doc. #64]**

The Plaintiff, Veronica Pretty, brought this action against the Defendants,

the Prudential Insurance Company of America and Wallach Surgical Devices, Inc.,

seeking reinstatement of her long-term disability benefits under an employee

benefit plan governed by the Employee Retirement Income Security Act of 1974,

29 U.S.C. § 1001 et seq (hereinafter referred to as "E.R.I.S.A.."). The Plaintiff had

also asserted Connecticut state law claims for breach of contract and fraudulent

misrepresentation, but these claims were dismissed by the Court's Order dated

January 27, 2009. See Doc. # 52. The Plaintiff's two remaining claims sound in

E.R.I.S.A. Presently pending before the Court is the Plaintiff's motion to compel

deposition testimony and the Defendants' motion for summary judgment. See

Doc. ## 56, 64. For the reasons that follow, the Plaintiff's motion to compel is

DENIED. The Defendants' motion for summary judgment is GRANTED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The following facts relevant to the Defendants' motion for summary judgment are undisputed unless otherwise noted.

The Plaintiff was formerly employed at Defendant Wallach Surgical Devices, Inc. (hereinafter "Wallach").  She began her employment at Wallach on April 23, 1990 and, at all times relevant to this action, worked as an accounts payable clerk.  Wallach provided long-term disability coverage to its employees, including the Plaintiff, pursuant to an employee benefit plan (hereinafter the "Plan"), which is governed by E.R.I.S.A.  The Plan was underwritten by Defendant Prudential Insurance Company of America (hereinafter "Prudential") pursuant to Group Insurance Contract No. PVIB-04 (hereinafter the "Group Contract").  Prudential is designated as the Claims Administrator of the Plan and, pursuant to the Group Contract, is thereby vested with fiduciary authority to determine whether a participant enrolled under the Plan is eligible for benefits.  See Adm. Record at D00604 ("The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits.").  The Plaintiff asserts, however, that the grant of fiduciary authority to Prudential was invalid because Prudential determines both eligibility to participate in the Plan and eligibility to receive benefits, and because the Plaintiff did not participate in the negotiation of the terms of the Plan nor in the selection of a fiduciary to administer the Plan.  Pursuant to the Plan, Prudential is to pay a monthly payment

2

for a period of disability.  Disability exists when Prudential determines that each of the following conditions are satisfied:  (a) the claimant is "unable to perform the material and substantial duties of [her] regular occupation due to [her] sickness or injury;" and (b) the claimant has "a 20% or more loss in [her] indexed monthly earnings due to that sickness or injury."  Adm. Record at D00582.

On October 7, 2004, the Plaintiff applied for long-term disability benefits under the Plan.  Adm. Record at D00017 – D00037.  The Plaintiff claimed that she was unable to tolerate sitting and physical work due to a chronic recurrent cervical condition, for which she had surgery in 1999.  Under the Plan, benefits may begin after an "elimination period," which is the first 90 days of continuous disability.  Adm. Record at D00575.  The Plaintiff remained out of work during the 90-day elimination period.  On November 1, 2004, Prudential informed the Plaintiff that her claim for long-term disability benefits had been approved effective October 13, 2004 based upon medical information provided by her treating physician.  See Adm. Record at D00038 - D00039.  The Plaintiff was granted a monthly benefit of $2,179.82.  Following the initial eligibility determination, Prudential continued to evaluate the Plaintiff's claim for current eligibility.

By letter dated November 4, 2005, Prudential informed the Plaintiff that, at that time, she no longer qualified for long-term disability benefits under the Plan because the medical records on file did not indicate restrictions or limitations that would prevent her from performing seated work duties.  Specifically, Prudential made the following determination:

3

We have reviewed the updated medical information in your case file including a MRI dated November 12, 2004, and an office visit dated September 12, 2005 from your treating physician, Dr. Wijeskero.  Based on the medical information reviewed, which indicated a prior history of a second level cervical fusion, we would expect you to have restrictions of no overhead reaching, no overhead lifting, and no lifting over 20lbs and no sustained flexion or extension of the neck.  The medical records on file did not indicate restrictions or limitations that would preclude you from seated work duties, and there is no evidence of neural foraminal stenosis or spinal cord impingement.

The material duties of your occupation as an Accounts Payable Clerk involves the following:  Performs any combination of the following:  calculating, posting, and verifying duties to obtain financial data for use in maintaining records.

In performing the occupation's material and substantial duties a person would generally be required to exert force to lift, carry, push and pull an object weighing up to 10lbs occasionally.  The individual would be primarily seated but may involve standing or walking on an occasional basis.  It requires frequent reaching, handling and fingering.  It would not require overhead reaching or sustained flexion of the neck as an employee could reasonably alter his or her position throughout the day.

After a thorough evaluation of the above information, we have determined that as of November 4, 2005, you no longer meet the definition of being totally disabled from performing the duties of your own occupation as defined above.

Adm. Record at D00013-D00016.

The Plaintiff appealed Prudential's decision on December 16, 2005.  To assist in its evaluation of the Plaintiff's appeal, in February of 2006, Prudential scheduled two file reviews.  The first file review was conducted by R. David Bauer, M.D., a physician specializing in spinal surgery, to address the Plaintiff's alleged physical impairments.  The second file review was conducted by Stephen Gerson, M.D., a board certified psychiatrist, to address the Plaintiff's alleged

psychiatric impairments.  After reviewing the medical records provided, Dr. Bauer

prepared a report in which he made the following conclusions:

> Without any apparent physiological reason, the claimant has significant self-reported complaints that have been unresponsive to objective treatments.   This is not consistent with any known physiological disease.  Therefore in my opinion there are no significant functional impairments from November 4, 2005 forward.  Her self-reported pain complaints alone do not constitute a functional impairment . . .

> There is no evidence that any restrictions or limitations are necessary based upon her previous cervical surgery.  The claimant had functioned for several years without pain, without any limitations.  There should be no limitation on her ability to sit, stand, walk, reach, lift, carry or perform repetitive and fine motor activities based upon the evidence reviewed . . .

> The medical records indicate significant self-reported pain complaints without objective functional impairment.  Further treatment is not going to change these pain complaints, as they do not appear to have a physiological basis.   As there are no physiological abnormalities demonstrated, the prognosis cannot be determined.

> The medical records do indicate that the claimant had symptoms of slurred speech and erratic behavior consistent with overdosing and over-utilization of narcotics medications.   When several providers appropriately controlled her medications, these cognitive side effects disappeared.   It should be noted that she was uncooperative with narcotic contracts with several of her providers indicating volitional overdose of the medication.

> In my opinion, the claimant has been over treated.  In the absence of any physiological abnormality, it is unlikely the trigger point objections, facet joint injections, epidural injections would have any effect.  To continue to try and inject, poke or prod this individual would be neither reasonable, nor necessary.  The claimant should be weaned off of her medications, as this will give her the highest functional response.

> The claimant's self-reported chronic pain is not supported by and is not consistent with the diagnostic testing such as the multiple MRI's that do not demonstrate objective pathology or EMG which did not show radiculopathy . . .

> There is no physiological evidence to explain the claimant's severe pain complaints.  She appears narcotic dependent, which itself can create pain.  The diagnostic imaging demonstrates a well healed fusion with minimal, non physiological disc bulges.  There are no physical events that occurred that would explain the change from a functioning well-healed two-level fusion to the self-reported pain complaints that are demonstrated.   Therefore, there is no evidence of significant functional physiological impairment.

Adm. Record at D00488 – D00493.

> After reviewing the medical records provided, Dr. Gerson prepared a report

in which he made the following conclusions:

> Data doesn't validate . . . that claimant has substantial psychological or cognitive impairments from July 14, 2005 forward.  No documentation of sustained severe depression, anxiety, cognitive impairment, obtundation from the medication or other issues would impair her from doing as much of her job as an accounts payable clerk.

> There are no restrictions or limitations.

> There has been oversedation from opiates, otherwise no reported side effects of substantial nature from any of her psychotropic medications.  Again she has been overly medicated with opiates sometimes and has abused them.

> I do believe the patient is having a depressive reaction related to her chronic pain syndrome, but nonetheless it is not impairing . . .  Pain is not substantial enough to interfere with work functions.

> Medical records don't indicate substantial psychiatric impairment.

> It is not clear to me that appropriate pain treatment has been given . . .

> I don't see [claimant] substantially functionally impaired.

Adm. Record at D00267.01.

**Based upon the medical file reviews conducted by Dr. Bauer and Dr. Gerson, Prudential concluded that the Plaintiff was capable of performing her job as an accounts payable clerk and upheld its decision by letter dated March 27, 2006.  In this letter, Prudential made the following determinations:**

> **In your letter of appeal, you reported that you were disabled secondary to chronic pain, as well as from a psychiatric standpoint . . .**
>
> **[T]here is no physiologic evidence to explain your severe self-reported pain complaints and it has been determined that you have no significant functional impairments from a physical standpoint from November 4, 2005 to the present.**
>
> **We have also reviewed the available medical data in the administrative record upon appellate review to determine if there was support for impairment from a psychiatric standpoint . . .  [T]he available medical data in the administrative record does not support an impairing psychiatric condition and your own treating psychiatrist is not of the opinion that you are disabled from a psychiatric standpoint.**

**Adm. Record at D00009 – D00012.  The Plaintiff contends, however, that the medical file reviews conducted at the request of the Defendants were not objective and independent, and instead that they were done to support Prudential's denial of her claim for long-term disability benefits.**

**On May 18, 2006, the Plaintiff sent Prudential a second letter of appeal, requesting reconsideration of Prudential's decision to discontinue her long-term disability benefits.  Adm. Record at D00311 – D00313.  In her letter, the Plaintiff again claimed that she was disabled because of chronic pain and from a psychiatric standpoint.  To assist in the evaluation of the Plaintiff's second appeal, Prudential scheduled two additional file reviews.  The first file review was**

conducted by Jack Denver, M.D., a physician board certified in physical medication and rehabilitation with a subspecialty board certification in pain medication and spinal cord medicine, to address the Plaintiff's alleged physical impairments.  The second file review was conducted by Marcus Goldman, M.D., a board certified psychiatrist, to address the Plaintiff's alleged psychiatric impairments.  After reviewing the medical records provided, Dr. Denver prepared a report in which he made the following conclusions:

> Ms. Pretty's functional impairment is due to consistent findings of mild cervical range of motion deficits due to a history of a previous two-level cervical fusion . . .
>
> Due to the above impairment relating to the cervical spine, Ms. Pretty should be unrestricted for walking, sitting, fingering and performing gross and fine motor activities at desk level . . .
>
> The duration of the patient's mild cervical range of motion impairment is considered permanent . . .
>
> The patient is reporting severe limitations . . .  These limitations are self-imposed and do not directly correlate with the above-described impairment . . .  As such, Ms. Pretty would be expected to be able to perform many of the tasks that she claims she is unable to.
>
> The patient is noted to have documented medication side effects . . . This was a transient phenomenon and additional side effects of medications have not been documented in the record with her continued chronic use.  The patient is not expected to have any functional impairment from the use of her current medications since that time.

Adm. Record at D00500 – D00502.

After reviewing the medical records provided, Dr. Goldman prepared a report in which he made the following conclusions:

> The claimant does not have a psychological or cognitive impairment from November 4, 2005 forward . . .
>
> No restrictions or limitations are necessary as the claimant is not impaired.
>
> Medical records are not indicating a significant impairment.
>
> The medical records do not support significant adverse side effects from psychiatric medication . . .
>
> Based on the documentation treatment has been lacking.  She is seen with a frequency by mental health providers that is inconsistent with acuity, severity or debility.  Until more recently, there were no further notes from her therapists, when denial of benefits became more of an issue.  There are no well delineated treatment plans or goals and no strategies to return to work.
>
> A review of this record reveals no data consistent with a major affective, anxiety or psychotic disorder that would impair functionality or preclude work . . .  There is clearly no sufficient objective data supportive of a DSM diagnosis of Bipolar Disorder . . .  It must be pointed out that mildly reactive issues related to denial of benefits does not constitute grounds for the establishment of an ongoing, acutely severe, debilitating mental disorder that would preclude work.

Adm. Record at D00509 – D00511.

Based upon the medical file reviews conducted by Dr. Denver and Dr. Goldman, Prudential again concluded that the Plaintiff was capable of performing her job as an Accounts Payable Clerk and upheld its original decision to terminate the Plaintiff's long-term disability benefits on the basis that she did not meet the definition of disability under the Plan.  Prudential informed the Plaintiff of its decision by letter dated August 25, 2006.  Again, the Plaintiff contends that the medical file reviews conducted at the request of the Defendants were not

objective and independent, and instead that they were done to support Prudential's denial of her claim for long-term disability benefits.

The Plaintiff claims that the medical records submitted by her treating physicians - Kenneth Kramer, M.D.; Jeffrey Caruth, M.D.; Richard Yun, M.D.; Mac Tighe, M.D.; and Abraham Mintz, M.D. - contradict Prudential's conclusions and establish that she is fully disabled due to, *inter alia*:  cervical post laminectomy syndrome, cervical radiculopathy, cervical facet syndrome, myofascial pain syndrome, ongoing esophageal problems, and major depressive disorder.  Adm. Record at D00017 – D00459; D00512 – D00555.  The Plaintiff asserts that further support for her claim of total disability is set forth in a ruling by Administrative Law Judge Eileen Burlison dated June 19, 2006, entered in connection with the Plaintiff's social security disability application.  In her ruling, Judge Burlison found as follows:

> If the claimant had a residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rules 201.21 and 201.22.   However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity.  The vocational expert testified that given all of those factors there are no jobs in the national economy that the individual could perform.

Adm. Record at D00352.

On January 14, 2008, the Plaintiff filed suit against the Defendants in this Court, seeking reinstatement of her long-term disability benefits.  In addition to claims under E.R.I.S.A., the Plaintiff also asserted Connecticut state law claims for breach of contract and fraudulent misrepresentation.  On December 10, 2008, the Defendants filed a motion to dismiss the Plaintiff's state law claims.  The Court granted the Defendants' motion to dismiss on January 27, 2009, and thus only the Plaintiff's two E.R.I.S.A. claims remain in dispute.  The Defendants filed the instant motion for summary judgment on March 9, 2009, and the Plaintiff filed her opposition thereto on May 7, 2009.  On May 5, 2009, the Plaintiff filed a motion to compel deposition testimony, which seeks to compel the deposition of a representative designated by the Defendants to be in the best position to be deposed with respect to the administration of the Plaintiff's long-term disability plan with Prudential.

## II.  DISCUSSION

### A.  Motion to Compel

The Court will first address the Plaintiff's motion to compel, because the resolution of the motion to compel will impact the Court's ruling on summary judgment.  On June 26, 2008, the Court entered a discovery deadline of December 15, 2008.  Although the parties' Joint Rule 26(f) Report informed the Court that the parties disagreed on the scope and extent of discovery as of June 26, 2008, the Plaintiff did not seek the Court's intervention before the discovery deadline.  On January 15, 2009, after the discovery deadline had passed, the Plaintiff served a

deposition notice on all counsel of record requesting the attendance of a representative designated as the person in the best position to be deposed with respect to the administration of the Plaintiff's long-term disability plan with Prudential.  The Plaintiff did not file a motion for extension of time in which to complete discovery.  On February 18, 2009, the Defendants informed counsel for the Plaintiff that she was not entitled to conduct discovery outside of the administrative record.  Shortly thereafter, on March 9, 2009, the Plaintiff filed the instant motion to compel.

The Plaintiff contends that she should be allowed to depose the relevant Prudential Plan Administrator because she is entitled to discovery on the issue of whether the individual who reviewed the Plaintiff's claim was also an employee of the defendant Prudential, which she asserts would create a conflict that could trigger de novo review by the Court.  The Plaintiff further contends that, even if abuse of discretion is the appropriate standard of review, the Court needs to consider this potential conflict as a factor in determining whether the Plan administrator has abused its discretion in denying the Plaintiff's claim for benefits.

## 1.  Timeliness of Motion to Compel

As an initial matter, the Defendants argue that the Plaintiff's motion to compel should be denied because it is untimely.  Although Fed. R. Civ. P. 37 provides no deadline for the filing of a motion to compel, the Defendants cite several district court decisions holding that where a plaintiff is aware of the

existence of documents or other discovery questions before the close of discovery and issues discovery requests after the discovery deadline has passed, the discovery requests should be denied.  See, e.g., Slomiak v. Bear Stearns & Co., No. 83 Civ. 1542-CSH, 1985 U.S. Dist. LEXIS 21860, at *1 (S.D.N.Y. Mar. 12, 1985) (refusing to compel discovery after discovery deadline had passed where plaintiff's counsel was aware of witnesses sought to be deposed and the relevancy of their testimony prior to the deadline); Schweitzer v. Mulvehill, No. 95 Civ. 10743, 1999 U.S. Dist. LEXIS 174, at *7-*10 (S.D.N.Y. Jan. 13, 1999) (precluding deposition of non-party because discovery deadline had passed); Four M Corp. v. Guiliano, No. 89 Civ. 5275 (KTD), 1991 U.S. Dist. LEXIS 3656, at *1 (S.D.N.Y. Mar. 27, 1991) (granting motion to quash discovery subpoenas on the basis that they were served after the discovery deadline and parties were on notice as to information sought prior to the deadline).  This outcome reflects the importance of avoiding undue delay, which is essential to "assur[e] that justice for all litigants be neither delayed nor impaired."  Outley v. City of New York, 837 F.2d 587, 589 (2d Cir. 1988); see also In re Health Mgmt., Inc., No. CV 96-0889(ADS), 1999 WL 33594132, at *5 (E.D.N.Y. Sep. 25, 1999) (quoting 8a Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d).

The Plaintiff explains her failure to seek discovery until after the discovery deadline had passed by asserting that the Defendants did not include a copy of the administrative record in their initial disclosures, and in fact did not disclose the record for the first time until February 18, 2009, more than two months after

the discovery deadline.  Furthermore, on March 9, 2009, the Defendants provided the Plaintiff a second copy of the administrative record with duplicative pages redacted.  The Plaintiff argues that, upon having an opportunity to review the administrative record, she discovered for the first time that it appears that Prudential has assumed the role of both (a) determining eligibility to participate in the Plan, and (b) determining eligibility to receive benefits.

As the Defendants correctly point out, the Plaintiff has been aware of the Defendants' position that this case is limited to review on the administrative record since shortly after the commencement of this action.  In the parties' joint Rule 26(f) Report, which was filed on June 26, 2008, Prudential stated that "its decision to discontinue long-term disability benefits to the plaintiff was not arbitrary or capricious based on the administrative record presented to [Prudential] and it must stand."  Doc. #32.  However, the Plaintiff did not seek a copy of the administrative record and failed to serve any written discovery requests during the discovery period.  Therefore, it would be within the Court's discretion to deny the Plaintiff's motion to compel as untimely.  Nevertheless, the Court would prefer to consider the issues presented by the Plaintiff's motion on the merits rather than to deny it summarily on procedural grounds.  See Magedson v. Fina, No. 91-CV-213, 1993 WL 113489, at *2 (N.D.N.Y. Apr. 12, 1993) ("[A]s is its custom, the court would prefer to resolve the issues presented by these motions on their merits rather than deny them summarily based upon a procedural technicality."); Imperial Chemicals Indus., PLC v. Barr Laboratories,

14

Inc., 126 F.R.D. 467, 471 (S.D.N.Y. 1989) ("As a general rule, it is preferable that cases be decided on their merits, not by denying parties access to relevant evidence as a penalty for procedural irregularities.").  Accordingly, the Court will consider whether the Plaintiff has satisfied the standard for permitting discovery to supplement the administrative record in an E.R.I.S.A. case.

Before considering the merits of the Plaintiff's request for discovery, however, the Court will discuss the applicable standard of review in E.R.I.S.A. cases, because the standard of review impacts the proper scope of discovery. See Burgio v. Prudential Life Ins. Co., 253 F.R.D. 219, 229 (E.D.N.Y. 2008) ("The question of the standard of review applicable in an ERISA action is distinct from the question of the proper scope of discovery.  The Court is mindful, however, that the former question does have some impact on the latter."); see also Yasinoski v. Connecticut General Life Ins. Co., No. CV 07-2573(RRM)(AKT), 2009 WL 3254929, at *3 (E.D.N.Y. 2009).

### 2.  Standard of Review in E.R.I.S.A. Denial of Benefit Cases

The standard governing review of an administrator's interpretation of an E.R.I.S.A. benefit plan was first articulated by the Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).  The Supreme Court held that "a denial of benefits . . . is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Id. at 115. If such discretionary authority is given, the administrator's denial of benefits is

reviewed for an abuse of discretion.  <u>Id.</u>  Furthermore, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a facto[r] is determining whether there is an abuse of discretion."  <u>Id.</u> (citation and quotation marks omitted).

In <u>Metropolitan Life Ins. Co. v. Glenn</u>, 128 S.Ct. 2343, 2347-48 (2008), the Supreme Court clarified its earlier decision in <u>Firestone</u>.  The Supreme Court explained that <u>Firestone</u> set forth four principles of review:  "(1) in determining the appropriate standard of review, a court should be guided by principles of trust law . . . [;] (2) Principles of trust law require courts to review a denial of plan benefits under a *de novo* standard unless the plan provides to the contrary [;] (3) Where the plan provides to the contrary by granting the administrator or fiduciary *discretionary authority* to determine eligibility for benefits, trust principles make a *deferential standard* of review appropriate[;] (4) If a benefit plan gives discretion to an administrator or fiduciary who *is operating under a conflict of interest*, that conflict must be *weighed as a factor* in determining whether there is an abuse of discretion."  <u>Id.</u> (quotation marks omitted; emphasis in original).

The Supreme Court then focused specifically upon the fourth principle, concluding that "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of 'conflict of interest' to which <u>Firestone</u>'s fourth principles refers."  <u>Id.</u> at 2348.  The Supreme Court clarified that, under <u>Firestone</u>, this "conflict should be weighed as a factor in determining whether there is an abuse of discretion."  <u>Id.</u> at 2350.  The Supreme Court

rejected the idea that a conflict of interest justifies changing the standard of review from deferential to *de novo*, reasoning that "[t]rust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion."  Id.

Following the Supreme Court's decision in Glenn, the Second Circuit reexamined its standard of review in cases where a plan administrator has a conflict of interest.  See McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 132-33 (2d Cir. 2008).  In McCauley, the Second Circuit explained that, following Glenn, "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make *de novo* review appropriate."  Id. at 133 (citing Glenn, 128 S.Ct. at 2348).  "This is true even where the plaintiff shows that the conflict of interest affected the choice of a reasonable interpretation."  Id.

Thus, pursuant to the guidance provided by the Second Circuit in McCauley, even if the Plaintiff is able to prove that Prudential was conflicted, this conflict would not justify a *de novo* standard of review if the Plan granted Prudential discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.  Therefore, the Court must address whether the Plan accords Prudential with discretionary authority.

17

In determining whether plan administrators have been granted discretionary authority, courts "focus on the breadth of the administrators' power – their authority to determine eligibility for benefits or to construe the terms of the plan." MacMillan v. Provident Mut. Life Ins. Co., 32 F. Supp. 2d 600, 610 (W.D.N.Y. 1999) (citations and quotation marks omitted). Although "no one word or phrase must always be used to confer discretionary authority, the administrator's burden to demonstrate insulation from de novo review requires either language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording." Suarato v. Bldg. Servs. 32bj Pension Fund, 554 F. Supp. 2d 399, 417 (S.D.N.Y. 2008) (quoting Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2d Cir. 1999).

In this case, the Plan provides that Prudential, as the Claims Administrator, has the "sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." Adm. Record at D00604. Further, the Plan grants Prudential with the authority to determine whether a beneficiary is disabled as defined by the Plan. Id. at D00582. This language clearly grants Prudential the discretionary authority to determine whether a beneficiary is eligible for disability benefits. Accordingly, a deferential standard of review is appropriate. See Glenn, 128 S.Ct. at 2348.

"Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and

capricious, meaning without reason, unsupported by substantial evidence or erroneous as a matter of law.  Where both the administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control.  Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious."  <u>McCauley</u>, 551 F.3d at 132-33 (citations and quotation marks omitted).

### 3.  <u>Standard to Determine Whether to Permit<br>Discovery Outside the Administrative Record</u>

Where, as here, a plan administrator's benefits decision is reviewed under the arbitrary and capricious standard, the district court's review is ordinarily limited to the administrative record.  <u>See</u> <u>Miller v. United Welfare Fund</u>, 72 F.3d 1066, 1071 (2d Cir. 1995).  "This rule is consistent with the fact that nothing in the legislative history [of E.R.I.S.A.] suggests that Congress intended that federal district courts would function as substitute plan administrators" and with E.R.I.S.A.'s "goal of prompt resolution of claims by the fiduciary." <u>Id.</u> (internal citations and quotation marks omitted); <u>see also</u> <u>Nelson v. Unum Life Ins. Co. of America</u>, 421 F. Supp. 2d 558, 572 (E.D.N.Y. 2006) ("in determining whether the [administrator's] denial of benefits was arbitrary and capricious, it is proper to consider nothing more and nothing less than the administrative record.").  However, this analysis does not end the Court's inquiry.  Even when the arbitrary

and capricious standard of review applies, courts within the Second Circuit have considered evidence outside the administrative record in certain circumstances. See, e.g., Zervos v. Verizon Welfare Fund, 252 F.3d 163, 174 (2d Cir. 2001) (noting that a district court is "not . . . confined to the administrative record" on the issue of whether the "decision to deny [the plaintiff's] coverage request was tinged by a conflict of interest"); Mitchell v. First Reliance Standard Life Ins. Co., 237 F.R.D. 50, 53 (S.D.N.Y. 2006) (permitting discovery regarding administrator's alleged conflict of interest, nature of information considered by administrator in making benefits determination, criteria used for its decision, and whether the administrative record was complete); Naegle v. Elec. Data Sys. Corp., 193 F.R.D. 94, 103 (W.D.N.Y. 2000) ("[R]eview under this deferential [arbitrary and capricious] standard does not displace using pretrial discovery to determine the actual parameters of the administrative record and whether or not the fiduciary acted arbitrarily and capriciously with respect to a claim for benefits under a plan . . .").  For instance, courts have permitted discovery of evidence outside the administrative record "on issues such as the 'parameters' of the administrative record, whether the administrator had a conflict of interest, and other issues relating to procedures used for adjudication by the plan administrator."  Mitchell, 237 F.R.D. at 53.

With these principles in mind, the Court turns to the appropriate standard for determining whether to permit discovery outside the administrative record in this case.  As other district courts within the Second Circuit have noted, "the

decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence." Burgio, 253 F.R.D. at 229 (quoting Allison v. Unum Life Ins. Co., No. CV 04-0025, 2005 WL 1457636, at *11 (E.D.N.Y. Feb. 11, 2005)).  The Court agrees with other district courts within this Circuit that a plaintiff seeking discovery outside the administrative record "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement." Id. at 230 (quoting Trussel v. Cigna Life Ins. Co. of New York, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008)); see also Anderson v. Sotheby's Inc. Severance Plan, No. 04 Civ. 8180, 2005 U.S. Dist. LEXIS 9093, at *16 (S.D.N.Y. May 13, 2005) (finding that the plaintiff "must show a reasonable chance that the requested discovery will satisfy the good cause requirement" to be entitled to discovery outside the administrative record").[1]

---

[1] Some courts, however, have required a party seeking discovery to make a full "good cause" showing. See, e.g., Lane v. Hartford, No. 06 Civ. 3931, 2006 WL 3292463, at *2 (S.D.N.Y. Nov. 14, 2006) (applying arbitrary and capricious standard of review and noting that "[d]iscovery may be allowed [ ] where a plaintiff shows good cause for the court to consider additional evidence outside the administrative record, such as when there is a basis for believing that a plan administrator may have had a conflict of interest . . .  Even upon a showing of good cause, whether to allow discovery beyond the administrative record is within the reviewing court's discretion."); McGann v. Travelers Property Cas. Corp. Welfare Benefit Plan, No. 06-CV-527, 2007 WL 2769500, at *10 (E.D.N.Y. Sept. 21, 2007) (denying summary judgment without prejudice to renew upon the completion of limited discovery where the plaintiff "demonstrated good cause to look beyond the administrative record and conduct discovery" on the issue of whether there was "evidence tending to establish that the plan administrator was conflicted and that the procedures employed in arriving at the claim determination were flawed").

If the plaintiff makes a "reasonable chance" showing and discovery is allowed, "the plaintiff can then apply to the district judge for a determination as to whether she will expand the record to include information that discovery yielded, the nature of which is not yet known." Burgio, 253 F.R.D. at 229. Thus, even if discovery outside the administrative record is permitted, a plaintiff must then make a showing of good cause before the district court may consider the information obtained via discovery in reviewing a plan administrator's benefits determination. The mere appearance of a conflict alone is insufficient to meet the reasonable chance standard. See Yasinoski, 2009 WL 3254929, at *11.

Under Second Circuit law, it is well-established that a conflict of interest does not *per se* constitute good cause, which is a more stringent standard than the reasonable chance standard for permitting discovery. See Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 294-96 (2d Cir. 2004) (clarifying prior decision in Defelice v. Am. Int'l Life Assurance Co. of New York, 112 F.3d 61 (2d Cir. 1997), holding that "a conflicted administrator does not *per se* constitute good cause," and cautioning district courts "that a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause"). The Second Circuit reasoned that "a *per se* rule would effectively eliminate the 'good cause' requirement and the discretion afforded to district courts in deciding whether to admit additional evidence, because claims reviewers and payors are almost always either the same entity or financially connected in some other way." Id. at 295. Thus, in order to justify the consideration of evidence outside the

22

administrative record, the Plaintiff must demonstrate a conflict of interest as well as some additional factor, such as lack of "established criteria for determining an appeal," a "practice of destroying or discarding all records within minutes after hearing an appeal," or a "failure to maintain written procedures" for claim review. Id. at 293, 296.  Although Locher involved de novo review of an administrator's denial of E.R.I.S.A. benefits, the same good cause standard applies where the administrator is vested with discretionary authority.  See Lee v. Aetna Life and Cas. Ins. Co., No. 05 Civ. 2960(PAC), 2006 WL 345854, at *3 (S.D.N.Y. Feb. 13, 2006).

Here, the Plaintiff had but did not avail herself of the opportunity to conduct discovery during the five month period afforded by the Court's June 26, 2008 scheduling order, nor did she request the Court's intervention to solve the discovery dispute disclosed to the Court in the parties' Rule 26(f) Report filed June 26, 2008.  See Doc. ## 32, 36.  She now seeks to take the deposition of "a representative, designated by the Defendants as in the best position to be deposed with respect to the administration of the Plaintiff's Long Term Disability Plan with Prudential."  Pl. Mem. in Support of Motion to Compel at 2.  The Plaintiff also requests that the deponent produce all documents in the Defendants' possession "related to the instant lawsuit," including "correspondence used in determining the basis for denial of the Plaintiff's eligibility for long term disability benefits."  Id.  The Plaintiff argues that this information is necessary to determine "whether the relevant administrator that reviewed the Plaintiff's claim was also an

employee of the Defendant, Prudential, and therefore whether a conflict existed." Id. at 5.  As evidence of the purported conflict, the Plaintiff cites the Plan itself, which on its face indicates that Prudential determines both eligibility to participate and entitlement to receive benefits from the Plan.  Id. at 6 (citing Adm. Record at D00561, D00604). Specifically, the Plaintiff's counsel intends to "question the potentially conflicted administrator of the Plan, and to inquire into the methodology of choosing 'independent' vocational and medical experts."  Id.

The Court finds this case to be analogous to Yasinoski, a case where, as here, the plaintiff moved to compel the deposition of the individuals employed by the defendants who were responsible for the denial of his claim for long-term disability benefits, along with the production of documents relating to the defendants' claims handling and evaluation.  2009 WL 3254929, at *1.  The plaintiff in that case argued that he was entitled to discovery outside the administrative record because the entity which denied his claim, Connecticut General Life Insurance Co., served as both claims administrator and claims payer, which created a conflict of interest and raised factual issues as to whether Connecticut General was not disinterested.  Id. at *2.  The Yasinoski Court denied the Plaintiff's motion to compel discovery outside the administrative record, finding that the Plaintiff had failed to show a reasonable chance that the requested discovery would satisfy the good cause requirement.  Id. at *13.  The Yasinoski Court distinguished earlier decisions from other district courts permitting discovery on the basis that, unlike in those cases, the plaintiff "has not

24

provided specific examples from the administrative record showing that [Connecticut General] exerted improper influence over Plaintiff's treating physician or other reviewing doctors resulting from, for example, prior relationships between [Connecticut General] and the doctors or questionable incentive structures."  Id. at *11.  Instead, the plaintiff in Yasinoski offered only "conclusory statements" regarding Connecticut General's purported conflict, which "falls short of satisfying the standard necessary for the court to order discovery outside the administrative record."  Id.

Likewise, in this case the Plaintiff fails to point to any specific evidence in the administrative record to support a conclusion that there is a reasonable chance that permitting her an additional opportunity to conduct discovery would yield information that would enable her to make a good cause showing, which is a prerequisite to her entitlement to discovery.  Rather, she merely asserts conclusorily that Prudential was conflicted because it determines both eligibility to participate in the Plan and eligibility to receive benefits.  While she suggests that this purported conflict may have impacted Prudential's methodology for selecting medical and vocational experts to review her claim, she is unable to point to any specific examples from the administrative record to lend credence to this assertion.  See Yasinoski, 2009 WL 3254929, at *11; see also Rubinow v. Aetna Life Ins. Co., No. CV 07-377(LDW)(AKT), 2009 WL 91047, at *4-*5 (E.D.N.Y. Mar. 31, 2009) (denying motion to depose Aetna employee involved in decision to reduce plaintiff's long-term disability benefits because plaintiff's assertion "that

25

there exists a structural conflict of interest because Aetna is both the claim insurer and claim administrator" did not, by itself, satisfy the standard to allow discovery outside the administrative record); <u>Schalit v. Cigna Life Ins. Co. of N.Y.</u>, 07 Civ. 0476, 2007 WL 2040587, at *3 (S.D.N.Y. July 12, 2007) (denying motion for general discovery outside the administrative record where plaintiff failed to provide any specific factual allegations to support her entitlement to such discovery).  The Plaintiff in the instant case makes an even less compelling argument than the plaintiffs in <u>Yasinoski</u> and the other cases cited, as the Court afforded her nearly six months to conduct discovery over the Defendants' tacit objection.  Accordingly, the Plaintiff's motion to compel is denied.  The Court will decide this case based upon the administrative record.

### B.  <u>Motion for Summary Judgment</u>

#### 1.  <u>Standard of Review</u>

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  <u>Bouboulis v. Transp. Workers Union of Am.</u>, 442 F.3d 55, 59 (2d Cir. 2006) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). If the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor."  Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).  "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture."  Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted).  A party also may not rely on conclusory statements or unsupported allegations that the evidence in support of the motion for summary judgment is not credible.  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004).  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  Am. Home Assurance Co. v.

27

**Hapag Lloyd Container Linie, GmbH**, 446 F.3d 313, 315 (2d Cir. 2006).

### 2. Discussion

As explained above, because the Plan conferred discretionary authority upon Prudential, the Court must review Prudential's denial of the Plaintiff's claim for long-term disability benefits under the arbitrary and capricious standard.  See *supra* Section II.B.2.  In order to overturn an administrator's denial of benefits under this standard, the Court must find that the administrator's decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law."  McCauley, 551 F.3d at 132 (citation omitted).  "Where both the administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control."  Id.  In this context, substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance."  Miller, 72 F.3d at 1071.

In conducting its review, the Court must "take account of several different considerations of which a conflict of interest is one."  Glenn, 128 S.Ct. at 2351.  "The weight given to the existence of the conflict of interest will change according to the evidence presented."  McCauley, 551 F.3d at 133.  "[W]here circumstances suggest a higher likelihood that [the conflict] affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration, the conflict of interest should prove

28

more important (perhaps of great importance) . . .  It should prove less important
(perhaps to the vanishing point) where the administrator has taken active steps to
reduce potential bias and to promote accuracy, for example, by walling off claims
administrators from those interested in firm finances, or by imposing management
checks that penalize inaccurate decisionmaking irrespective of whom the
inaccuracy benefits." Id. (quoting Glenn, 128 S.Ct. at 2351).

     With these considerations in mind, the Court proceeds to analyze the
relevant factors based on the record in this case.  The Court begins with an
analysis of the Plaintiff's medical information as it relates to her ability to perform
her job as an accounts payable clerk at Wallach.

     The basis for Prudential's termination of the Plaintiff's long-term disability
benefits was set forth in a November 5, 2005 letter written by Steven R. Cyr, a
Prudential Long Term Disability Analyst.  Cyr found that the material duties of the
Plaintiff's position included a combination of "calculating, posting, and verifying
duties to obtain financial data for use in maintaining account records.  In
performing this occupation's material and substantial duties a person would
generally be required to exert force to lift, carry, push and pull objects weighing
up to 10 pounds occasionally.  The individual would be primarily seated but [the
material duties] may involve standing or walking on an occasional basis.  It
required frequent reaching, handling and fingering.  It would not require overhead
reaching or sustained flexion of the neck as an employee could reasonably alter
his or her position throughout the day."  Adm. Record at D00014.  Cyr concluded

that "[t]he medical records on file did not indicate restrictions or limitations that would preclude [the Plaintiff] from seated work duties, and there is no evidence of neural foraminal stenosis or spinal cord impingement."  Id.

With respect to the Plaintiff's first appeal, Prudential scheduled file reviews by Dr. Bauer, a physician who specialized in spinal surgery, and Dr. Gerson, a board certified psychiatrist.  Adm. Record at D00484 - D00487.  Dr. Bauer found "no evidence of significant functional physiological impairment."  Id. at D00488 - D00493.  Dr. Gerson likewise concluded that the Plaintiff was not "substantially functionally impaired" from a psychiatric standpoint.  Id. at D00267.01.

With respect to the Plaintiff's second appeal, Prudential scheduled file reviews by Dr. Denver, a physician board certified in physical medicine and rehabilitation with a subspecialty board certification in pain medicine and spinal cord medicine, and Dr. Goldman, a board certified psychiatrist.  Adm. Record at D00480 - D00483.  Dr. Denver concluded that, based upon the Plaintiff's spinal impairment, she "should be unrestricted for walking, sitting, fingering and performing gross and fine motor activities at desk level[.]"  Id. at D00500 - D00502. Similarly, Dr. Goldman concluded that the Plaintiff's "medical records are not indicating a significant impairment" and that "[n]o restrictions or limitations are necessary as the claimant is not impaired."  Id.  D00509 - D00511.  Thus, each of the medical experts retained by Prudential to evaluate the Plaintiff's appeal of Prudential's termination of her long-term disability benefits concluded that the Plaintiff was not disabled from performing her job duties.

The Plaintiff argues that the Defendants have mischaracterized the existing medical information.  According to the Plaintiff, the medical records from her physicians establish that the Plaintiff "is fully disabled due to inter alia cervical post laminectomy syndrome, cervical radiculopathy, cervical facet syndrome, myofascial pain syndrome, ongoing esophageal problems, and a major depressive disorder."  Pl. Objection to Def. Motion for Summary Judgment at 13.  However, a careful review of the medical records cited by the Plaintiff do not clearly support her claim of total disability.

A review of the record yields several illustrations.  For instance, in a letter dated March 7, 2005, Dr. Abraham Mintz indicated that the Plaintiff reported "significant pain," but that her most recent MRI "demonstrates minimal tiny protrusions at the level above her fusion" and was "basically unchanged from the previous study."  Id. at D00053.  Dr. Mintz informed the Plaintiff that, in his opinion, "there is no indication for anterior cervical disc excision and fusion."  Id. Similarly, in a letter dated December 30, 2005, Dr. Mac K. Tighe indicated that "it looks like something is impinging on [the Plaintiff's] esophagus in the cervical region" but noted that a barrium swallow performed by Dr. Maria at Milford Hospital "did not reveal any impingement of the esophagus and her review of the MRI felt that some of this was an artifactual mass effect."  Id. at D00188 - D00189. Further, the Plaintiff's treating psychiatrist, Dr. Richard Yun, expressed the opinion that the Plaintiff was not disabled "from a psychiatric standpoint."  Id. at D00305 - D00306.

31

Although one of the Plaintiff's physicians, Dr. Kenneth Kramer, unequivocally opined that the Plaintiff is totally disabled from performing even a sedentary level of work, that opinion alone is insufficient to defeat the Defendants' motion for summary judgment.  See Adm. Record at D00309.  While the Court credits the opinion of Dr. Kramer as evidence in favor of the Plaintiff, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).  This is particularly true where, as here, the opinions of other of the Plaintiff's physicians are inconclusive or, in the case of Dr. Yun, contradict her claim that she is totally disabled.

The Plaintiff also relies upon Judge Burlison's June 19, 2006 decision finding her disabled for purposes of her social security disability application.  See Adm. Record at D00346 - D00352.  In this ruling, Judge Burlison credited the opinion of a vocational expert who testified that the Plaintiff's residual functional capacity precluded her from performing her duties as an accounts payable clerk. Id. at D00351.  While the Court views Judge Burlison's decision as providing some evidence of total disability, this decision is not binding on Prudential or this Court, and must be considered in light of all the available evidence.  See Kunstenaar v. Connecticut General Life Ins. Co., 902 F.2d 181, 184 (2d Cir. 1990) (stating that the definition of "disability" in the context of social security disability determinations

32

in not necessarily the same as the definition used in an E.R.I.S.A. plan and therefore is not binding in E.R.I.S.A. cases); Billinger v. Bell Atlantic, 240 F. Supp. 2d 274, 285 (S.D.N.Y. 2003) ("Plaintiff alleges that the Social Security Administration's decision to grant her social security disability benefits is evidence of a 'complete disability' under the Plan.  While I agree that it is 'evidence,' it is but one piece of evidence, and is far from determinative."); Kocsis v. Standard Ins. Co., 142 F. Supp. 2d 241, 255 (D. Conn. 2001) ("[A] plan administrator is not bound by the determination of the Social Security Administration.").

Significantly, while Judge Burlison found the Plaintiff to be disabled as defined by the Social Security Act, she also concluded that the Plaintiff "has the residual functional capacity to perform a limited range of work at the sedentary level of exertion."  Adm. Record at D00349.  Specifically, "[s]he is able to sit for six hours out of an eight hour day, but must be able to change positions (sit/stand) at will, and stand and or walk for two hours out of an eight hour day.  She is able to frequently lift and carry five pounds and frequently lift and or carry up to ten pounds.  In addition, she must avoid repetitive neck rotation, pushing and pulling, with the upper extremities and overhead reaching with the right upper extremity. She must avoid heights, working with or in proximity to moving machinery and exposure to temperature extremes."  Id.  Although Judge Burlison ultimately found to the contrary, this description of the Plaintiff's residual functional capacity appears to support a conclusion that the Plaintiff has the ability to perform the

functions of her position as an accounts payable clerk.  As summarized in Prudential's November 4, 2005 letter terminating the Plaintiff's long-term disability benefits, the material duties of this position would require an individual "to exert force to lift, carry, push and pull objects weighing up to 10 pounds occasionally. The individual would be primarily seated but [the material duties] may involve standing or walking on an occasional basis.  It required frequent reaching, handling and fingering.  It would not require overhead reaching or sustained flexion of the neck as an employee could reasonably alter his or her position throughout the day."  Adm. Record at D00014.

Furthermore, as reflected in the Second Circuit's decision in Kunstenaar, 902 F.2d at 184, the definition of disability for purposes of social security benefits qualification may be different than the definition of that term for E.R.I.S.A. Plan benefit qualification.  The Plaintiff has not established that the term "disability" is identical in both contexts in this case.  Therefore, while Judge Burlison's ruling is evidence of total disability, its probative value is limited by virtue of the fact that it contains language tending to suggest that the Plaintiff has the physical ability to perform her material job duties.

Finally, the Court must consider Prudential's purported conflict of interest. The Plaintiff claims that this conflict arises from the fact that the Plan gives Prudential the authority to determine both eligibility to participate in the Plan and eligibility to receive benefits.  The Plaintiff does not cite any cases recognizing this specific conflict as a conflict of interest that must be considered in

determining whether an administrator's denial of benefits was arbitrary and capricious.  Nevertheless, it is also evident from the Plan documents contained in the administrative record that Prudential both evaluates claims for benefits and pays benefits claims, which creates the type of conflict of interest recognized by the Supreme Court in <u>Firestone</u> and <u>Glenn</u>.  <u>See</u> Adm. Record at D00556 ("Prudential will provide or pay the benefits described in the Group Insurance Certificate(s) . . ."); <u>id.</u> at D00604 ("The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits."); <u>see also</u> <u>Glenn</u>, 128 S.Ct. at 2348 ("[T]he fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of 'conflict of interest' to which <u>Firestone</u>'s fourth principles refers.").  As noted above, the fact that Prudential has a potential conflict of interest does not automatically render its termination of the Plaintiff's long-term disability benefits arbitrary and capricious.  Rather, in determining whether Prudential's decision was arbitrary and capricious, two inquiries are pertinent:  "First, whether the determination made by the administrator is reasonable, in light of possible competing interpretations of the plan; [and] second, whether the evidence shows that the administrator was in fact influenced by such conflict."  <u>Kocsis</u>, 142 F. Supp. 2d at 254.

After considering all of the relevant factors, the Court holds that there is substantial evidence supporting Prudential's determination that the Plaintiff is not disabled as defined by the Plan, and therefore Prudential's decision to terminate

her long-term disability benefits was not arbitrary and capricious.  As discussed above, Prudential's Long Term Disability Analyst and all four medical experts retained by Prudential to review the Plaintiff's file concluded that she is not disabled as defined by the Plan.  The record demonstrates that the medical experts conducted a thorough review of the Plaintiff's medical records as well as the opinions of the Plaintiff's physicians.  Moreover, the record reflects that the Plaintiff's treating psychiatrist, Dr. Yun, does not view her as disabled, and the findings of several of her other physicians are inconclusive.

As the Second Circuit has explained, "Where both the administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." McCauley, 551 F.3d at 132.  Here, Prudential's decision to terminate the Plaintiff's long-term disability benefits on the basis that she no longer met the Plan's definition of totally disabled was clearly rational and supported by substantial evidence, and precedent dictates that this Court cannot upset that decision merely because there is some evidence in the record to the contrary.

The Plaintiff was found to be disabled for purposes of her social security disability application, but that determination is not binding upon Prudential and, in any event, is of limited probative value given that Judge Burlison's description of the Plaintiff's residual functional capacity suggests that she has the physical ability to perform her material job duties.  While the evidence cited by the Plaintiff is perhaps sufficient to support a rational argument that she is disabled as

36

defined by the Plan, the evidence does not suffice to create a genuine issue of material fact in a case such as this, where the Plan administrator has discretionary authority to determine eligibility for benefits.

To be clear, Prudential's apparent conflict of interest does not create a genuine issue of material fact as to whether its decision was arbitrary and capricious. The Plaintiff has presented no evidence to suggest that Prudential may have been, much less was, influenced by the conflict. She attempts to create a genuine issue of material fact by asserting that the medical experts retained to review the Plaintiff's file were not objective and independent as Prudential claims they were. However, this assertion is mere conjecture, as she points to no evidence to call their objectivity into question. The mere fact that Prudential retained the medical experts to review the Plaintiff's file does not make their opinions unreasonable. See Kocsis, 142 F. Supp. 2d at 254 ("The fact that Standard compensated its two independent medical reviewers does not render their opinions unreasonable."). The Plaintiff has also failed to provide any evidence of a history of biased claims administration by Prudential. Therefore, under the circumstances of this case, the Court does not believe that Prudential's conflict of interest should be accorded significant weight, and it does not render Prudential's decision to terminate the Plaintiff's long-term disability benefits arbitrary and capricious.

In summary, the Plaintiff has not presented sufficient evidence to permit this Court to upset a reasonable interpretation of the Plan by Prudential, the Plan

37

administrator.  There are no genuine issues of material fact that contradict the conclusion that Prudential's termination of the Plaintiff's long-term disability benefits was not arbitrary and capricious.  Accordingly, summary judgment must be granted in favor of the Defendants.

### III.  CONCLUSION

Based upon the above reasoning, the Plaintiff's motion to compel deposition testimony is DENIED, and the Defendants' motion for summary judgment is GRANTED.  The Clerk is directed to enter judgment for the Defendants, and to close this case.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  March 5, 2010.